**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILLIP H. HUGHES,<br><br>                       Plaintiff,<br>v.<br><br>LISA WALSH, *et al.,*<br><br>                       Defendants. | 3:18-cv-00607-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Phillip Hughes ("Hughes") against Defendants Krista Harris ("Harris"),[2] William Miller ("Miller"), Kathy Morales ("Morales"), Lisa Walsh ("Walsh"), and Jose Fonseca ("Fonseca"),[3] (collectively referred to as "Defendants").[4] Defendants have filed a motion for summary judgment. (ECF Nos. 36, 38.)[5] Hughes did not file an opposition to the motion, despite the court granting two

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Defendant Harris is referred to as "Mattice" in Hughes's complaint. (*See* ECF Nos. 6, 18.)

[3] Defendant Fonseca was served after the filing of the instant motion for summary judgment. (ECF No. 41.) While Defendant Fonseca filed a joinder to the answer (ECF No. 49), he did not file a joinder to the motion for summary judgment. However, the court finds that the arguments made in the motion for summary judgment are applicable to Fonseca and the motion should be granted as to Fonseca pursuant to Federal Rule of Civil Procedure 56(f)(1), in addition to the other defendants.

[4] Hughes additionally named Officer Sepulveda and Lt. John Doe as defendants in his complaint. (*See* ECF No. 6.) Sepulveda was dismissed from this action pursuant to Fed. R. Civ. P. 4(m), for a failure to effectuate service. (ECF No. 31.) Additionally, pursuant to the Scheduling Order, Hughes had until June 23, 2020, to substitute in the Doe defendant, which Hughes did not do. (ECF No. 25 at 1.) Accordingly, the court recommends the Doe defendant be dismissed from this action.

[5] ECF No. 38 consists of sealed documents filed in support of the motion for summary judgment.

extensions of time to do so. (*See* ECF Nos. 42, 48.) Having thoroughly reviewed the record and papers, the court hereby recommends Defendants' motion for summary judgment (ECF No. 36) be granted.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Hughes is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 6 at 1.) On December 31, 2018, proceeding *pro se*, Hughes filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint"), seeking monetary relief. (ECF No. 6.) In the Complaint, Hughes sued Defendants on four counts of violations of his Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*) Pursuant to 28 U.S.C. § 1915A(a), the District Court screened Hughes's Complaint on November 5, 2019. (ECF No. 5.) The Court allowed Hughes to proceed on all four counts for Eighth Amendment violations against Defendants Fonseca, Walsh, Harris, and Morales for failure to protect; and all four counts for Fourteenth Amendment due process violations to proceed against Defendants Fonseca, Miller, and Walsh. (*Id.* at 8.) The Court dismissed Hughes's Eighth Amendment deliberate indifference to serious medical needs claims without prejudice, and further dismissed his Fifth Amendment due process claims with prejudice, as further amendment would be futile. (*Id.*)

Much of Hughes's Complaint stems from an incident that occurred on May 8, 2018. In the Complaint, Hughes—a 70-year-old inmate who uses a walker—asserts he was the victim of an assault by three younger and stronger inmates. (ECF No. 6 at 3-4.) Hughes states he informed officers he was attacked after he refused to give his assailants his property. (*Id.*) Hughes alleges he repeatedly raised concerns about his safety to NNCC staff, but his concerns were ignored by prison officials. (*Id. at* 3.) Hughes was told to kite his caseworker. (*Id.*)

Hughes further alleges NNCC prison officials encouraged other inmates to attack him and destroy his property. (*Id.* at 6.) Hughes claims Sepulveda and Fonseca informed inmates they were performing a search in response to a complaint from Hughes. (*Id.* at

3.) It was during this time that Hughes's assault allegedly occurred. (*Id.* at 5.) After being taken to medical, Hughes claims his property was destroyed by his attackers in his absence. (*Id.*) Hughes further claims that despite his attack and the destruction of his property, he remained in the same unit with his attackers after he identified them to Associate Warden Walsh, and his case worker, Harris. (ECF No. 6 at 5.)

## A.   Defendants' Motion for Summary Judgment

On September 23, 2020, Defendants filed a motion for summary judgment. (ECF No. 36.) Defendants assert they are entitled to summary judgment because (1) NNCC prison officials were not deliberately indifferent to Hughes's serious health or safety issues; (2) Hughes failed to properly exhaust his administrative remedies before filing this lawsuit; (3) Hughes failed to state a Fourteenth Amendment Claim, and alternatively, NNCC officers did not participate in the loss or destruction of Hughes's property; (4) no due process violation occurred because adequate post-deprivation remedies were available in state court; and (5) alternatively, Defendants are entitled to qualified immunity. (*Id.*)

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the

court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . [I]n fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se*

4

litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

A District Court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after the court determines that there are no material issues of fact). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom); *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

**III.   DISCUSSION**

**A.   Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying

1  constitutional or statutory right.

2          **B.**      **Eighth Amendment Deliberate Indifference – Failure to Protect[6]**

3        Defendants assert they are entitled to summary judgment as to the Eighth
4  Amendment failure to protect claims. (*See* ECF No. 36 at 12-13.) Under the Eighth
5  Amendment, prison conditions should not "involve the wanton and unnecessary infliction
6  of pain" or be "grossly disproportionate to the severity of the crime warranting
7  imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison
8  conditions may be, and often are, restrictive and harsh, prison officials must "take
9  reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511
10 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty
11 … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S.
12 at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th
13 Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with]
14 demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' have
15 stripped them of virtually every means of self-protection and foreclosed their access to
16 outside aid, the government and its officials are not free to let the state of nature take its
17 course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted
18 in prison is simply not 'part of the penalty that criminal offenders pay for their offenses
19 against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

20       To establish a violation of this duty, the inmate must establish that prison officials
21 were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S.

---

[6] The court rejects Defendants' argument that Hughes failed to exhaust his administrative remedies because he failed to file a grievance asserting that he feared for his safety. Contrary to Defendants' position, Hughes exhausted his administrative remedy in Grievance No. 2006-30-67663. (*See* ECF No. 36-3 at 13). Grievance No. 2006-30-67663 states, at the second level, that he was injured and he feared for his life. (*See* ECF Nos. 36-3 at 13; 36-4 at 11.) The administrative remedy regarding Grievance No. 2006-30-67663 was exhausted because it received a second level response in accordance with NDOC Administrative Regulation 740. (*See* ECF No. 36-6 at 11); *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). Construing the evidence in the light most favorable to Hughes, Grievance No. 2006-30-67663 sufficiently exhausted his administrative remedy regarding his Eighth Amendment claims.

at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *Id.*

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated and admissible evidence establishing they did not act deliberately indifferent to Hughes's safety under either the objective or subjective elements of his failure to protect claims. First, Defendants' evidence establishes that prior to Hughes's assault, a Lieutenant advised him to "kite to his caseworker" if he was in fear for his safety. (*See* ECF Nos. 6 at 4; 36 at 12.) Hughes's caseworker received a kite from Hughes, on May 3, 2018, five days prior to the attack, stating he feared for his safety from another inmate in his dormitory. (ECF No. 36-1 at 12.) In Hughes's kite,

7

1  however, he did not identify the inmate he feared.  (*Id.*)  Hughes's caseworker contacted
2  him on May 3, 2018, the same day she received the kite, whereupon Hughes informed
3  her that he had worked out his issues with the individual and no longer feared for his
4  safety.  (*Id.*) Per Defendants' evidence, the first time Hughes mentions the name of his
5  attacker to prison officials occurred after the altercation when he provided the information
6  in a property claim form. (ECF No. 36-3 at 4.) Defendants point out in their motion that
7  because Hughes assured his caseworker that his issue was resolved, there was no reason
8  to escalate the issue to the Associate Warden.  (ECF No. 36 at 13.)

9  Next, Defendants evidence establishes that Hughes was taken to medical
10 immediately following the altercation on May 8, 2018.  (ECF No. 6 at 3.)  Once in medical,
11 Hughes told the examining nurse he was attacked by a "400 [lb] thug" who struck him and
12 knocked out his dentures.  (ECF No. 38.)  In the nurse's assessment, however, Hughes
13 showed "no visible signs of altercation…[n]o bruising or bleeding present," and that he
14 "maintained full" range of motion in his arm, with "[n]o signs of broken bones."  (*Id.*)
15 Hughes was then released back to his unit.  (*Id.*)

16 Defendants' evidence also reveals that while Hughes was being examined in the
17 medical unit after his assault, the inmate that attacked him was immediately moved to
18 another unit.  (*See* ECF No. 36-5 at 5.)  In addition, Hughes was also moved to another
19 unit upon his return from medical on May 8, 2018.  (ECF No. 36-2 at 3.)

20 Based on the evidence detailed above, the court finds that Defendants met their
21 burden of establishing, through admissible and authenticated evidence, that they acted
22 reasonably and did not subject Hughes to a risk of harm under either the objective or
23 subjective elements of the failure to protect claims. Consequently, the burden shifts to
24 Hughes to "designate specific facts demonstrating the existence of genuine issues for
25 trial." *In re Oracle Corp.*, 627 F.3d at 387.  Hughes, however, did not file an opposition or
26 submit any evidence for the court to consider to meet his burden. Accordingly, there is "no
27 genuine dispute to any material fact and the movant is entitled to judgment as a matter of
28 law." *Anderson,* 477 U.S. at 248.

As such, the court recommends that summary judgment should be granted in favor of all Defendants on Hughes's failure to protect claims.

### D. Fourteenth Amendment – Due Process

Defendants also move for summary judgment on Hughes' Due Process claims. The Fourteenth Amendment of the United States Constitution guarantees all citizens, including inmates, due process of law. However, the Constitution protects only certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Such interests may arise from the Constitution itself or from state law.

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

A prisoner's property rights are subject to such regulations as the NDOC may adopt. *See* NRS. § 209.239. AR 711.01(B)[7] disclaims any liability for the theft, loss, damage, or destruction of an inmate's personal property through the actions of any other inmates. (*See* ECF No. 36-7.) AR 711.02(2)(C) provides that the NDOC will only consider compensating inmates when property is lost or stolen with "direct responsibility" that is attributable to Department employees. (*Id.* at 6.)

---

[7] Defendants submitted an authenticated copy of AR 711 in support of their motion. (*See* ECF No. 36-7.)

9

Defendants argue Hughes does not claim in his Complaint that NNCC prison officials destroyed his property. (*See* ECF No. 36 at 14.) Instead, Hughes asserts NNCC prison officials failed to secure his property while he was in medical. (*Id.*) In fact, in Hughes's grievance he claims the inmate who assaulted him destroyed his property, not NNCC personnel. (*See* ECF No. 36-3 at 2.) The evidence presented by Defendants' reveals that this other inmate was moved immediately following the altercation on May 8, 2018 and it does not appear he had the opportunity to destroy Hughes's property. (ECF No. 36-5 at 5.) Thus, Defendants contend the evidence shows they did not direct or allow the other inmate to destroy Hughes's property, and that Hughes's own assertion made in his grievance precludes him from relief pursuant to AR 711. (ECF No. 36 at 15.) Finally, Defendants argue there is no due process violation here because Nevada Law provides meaningful post-deprivation remedies by means of small-claims actions. *See* NRS 4.370(p), NRS 73.101.[8]

This court agrees with Defendants' arguments as to Hughes's Fourteenth Amendment claims. First, the court finds that the evidence submitted by Defendants demonstrates NNCC officials were not personally or directly responsible for the destruction of Hughes's property. Here again, Hughes did not oppose the motion for summary judgment and has not presented any contrary evidence to create an issue of fact on these issues. Moreover, Hughes' Fourteenth Amendment claim also fails under Nevada law because there were state law remedies available to him in state small-claims court. Accordingly, the court recommends Defendants' motion be granted as to Hughes's Fourteenth Amendment claims.[9]

---

[8] Defendants cite NRS 4.370(o) which moved to NRS 4.370(p) effective January 1, 2020.

[9] The court does not address Defendants' qualified immunity argument because the court finds that Hughes's constitutional claims fail on the merits.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 36) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 36) be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: February 10, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**